UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

ELENA MAGOLNICK,

    Plaintiff,

vs.

RELIANT TECHNOLOGIES, INC.,
RELIANT TECHNOLOGIES, LLC and
SOLTA MEDICAL, INC.

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Elena Magolnick ("Plaintiff"), hereby sues defendants, Reliant Technologies, Inc., Reliant Technologies, LLC and Solta Medical, Inc. (collectively, "Reliant") and, as grounds therefor, states as follows:

## I. PARTIES

1.    Plaintiff is a resident and citizen of the State of Florida who, commencing in August 2006, received Reliant's Fraxel® laser procedure for treatment of minor melasma.

2.    The Fraxel® treatment not only failed to resolve Plaintiff's melasma, but also caused Plaintiff to suffer from severe and permanent hyperpigmentation on areas of her face where she previously had no melasma, requiring ongoing medical care and treatment.

3. Reliant Technologies, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business in Mountainview, California.

4. Reliant Technologies, LLC is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in Hayward, California. Reliant Technologies, LLC is a successor in interest to Reliant Technologies, Inc.

5. Solta Medical, Inc. is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in Hayward, California. Solta Medical, Inc. is a successor in interest to Reliant Technologies, Inc.

6. Reliant Technologies, Inc., Reliant Technologies, LLC and Solta Medical will be referred to herein, collectively, as "Reliant."

7. Reliant is the entity that developed and manufactured Fraxel® and introduced and delivered it into the stream of commerce.

8. Fraxel® was manufactured by Reliant, placed into the stream of commerce and advertised as a product intended as, *inter alia*, a "specific treatment of melasma, a disturbing skin pigmentation that presents as patterns of dark brown patches on the face."

## II. JURISDICTION AND VENUE

9. This is an action for damages in excess of $75,000.00, exclusive of costs and interest.

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship between Plaintiff and Reliant.

11. At all relevant times, Reliant transacted, solicited, and conducted business in the State of Florida, and in this District in particular, and derived substantial revenue from such business.

12. At all relevant times, Reliant was engaged in the business of designing, developing, manufacturing, testing, packaging, advertising, promoting, marketing, distributing, labeling, and/or selling Fraxel® treatment.

13. At all relevant times, Reliant expected or should have expected that its acts would have consequences within the State of Florida and this District, in particular.

14. At all relevant times, Plaintiff underwent the Fraxel® laser treatment at issue in this matter in this District.

### III. GENERAL ALLEGATIONS

15. Prior to July 27, 2005, Fraxel® had been offered by Reliant for use in treating soft tissue coagulation, skin resurfacing and correction of periorbital wrinkles and pigmented lesions, including age spots, sun spots and skin discoloration.

16. The procedure used by Fraxel® is a procedure called fractional photothermolysis, which procedure employs an array of small laser beams to create many microscopic areas of thermal necrosis within the skin called microscopic treatment zones.

17. The protocol for the procedure at the time of the treatment rendered to Plaintiff required the skin to be cleansed and a blue dye to be applied to the skin to aid in tracking of the laser beam deeper into the skin.

18. On or about July 27, 2005, Reliant expanded the application of Fraxel® for the specific treatment of melasma in all skin types.

19. Melasma typically occurs on sun-exposed facial areas, notably the cheeks, forehead, upper lip and nose and is most common in women of child-bearing age and among male and female adults of dark-skinned races. Melasma is a very common disorder, estimated to affect about 6 million women in the United States.

20. Commencing on or about August 24, 2006, Plaintiff, who is of Hispanic origin and who had mild melasma on her forehead and upper lip area, commenced what was to be a series of three (3) Fraxel® treatments with a physician who was, at that time, an instructor for Reliant.

21. In or about October 2006, after having undergone the first 2 Fraxel® treatments, Plaintiff experienced severe post-inflammatory hyperpigmentation ("PIH") such that the mild melasma spread significantly to previously unaffected areas on her face.

22. Because of the severe reaction suffered during the first 2 treatments, and in order to avoid further worsening of her condition, Plaintiff, after consulting with, and obtaining the agreement of her physician, did not undergo the third Fraxel® treatment.

23. At the time that Reliant introduced Fraxel® to the market, and at the time that Plaintiff underwent her Fraxel® treatments, Reliant knew or reasonably should have known that fractional laser treatment for melasma was contraindicated for people of Hispanic origin, such as Plaintiff. Specifically, Reliant knew or reasonably should have known that, due to such factors as depth of penetration, bulk tissue heating, thermal damage to the skin, and the required use of a blue dye as part of the treatment, PIH from the fractional laser treatment used on Plaintiff was a significant risk for people who are naturally prone to pigmentation, such as those of Hispanic and other specific origins, who are only seeking treatment for melasma.

24. Despite this knowledge, prior to placing the Fraxel® system used on Plaintiff into the market, and specifically emphasizing its safe application for the effective treatment of melasma on all skin types, Reliant did not perform sufficient testing on people of Hispanic origin with melasma, such as Plaintiff.

25. Additionally, Reliant failed to advise physicians providing the Fraxel® treatment that was used on Plaintiff that it (Reliant) did not perform adequate testing for that Fraxel® system on people of Hispanic origin, and that there was a significant risk of PIH occurring from the use of that Fraxel® system on people of Hispanic origin, such as Plaintiff, who have type III-V skin on the Fitzpatrick scale.

26. Rather, Reliant advised physicians that side effects such as hyperpigmentation from the use of the Fraxel® system that was used on Plaintiff

were extremely rare without disclosing the problems that Reliant knew or should have known would result for people of Hispanic origin.

27. The Fraxel® system used on Plaintiff was defective.

28. As a direct and proximate result of Reliant placing the subject Fraxel® into the stream of commerce, Plaintiff was caused to suffer bodily injury, disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the costs of medical care and treatment. These damages are either permanent or continuing in nature, and Plaintiff will continue to suffer these losses in the future.

## COUNT I - STRICT LIABILITY

29. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this Complaint as though more fully set forth herein, and alleges further:

30. The Fraxel® system used on Plaintiff, designed and manufactured by Reliant, was defective in design and/or manufacture in that when it left the hands of Reliant, the foreseeable risks exceeded the benefits associated with the design and/or formulation of this product.

31. The Fraxel® system used on Plaintiff, designed and manufactured by Reliant, was defective in design and/or manufacture in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

32. The Fraxel® system used on Plaintiff, designed and manufactured by Reliant, was defective in design and/or manufacture in that Reliant failed to adequately test this product before placing it into the stream of commerce.

33. As a direct and proximate result of the defective nature of the Fraxel®, Plaintiff was caused to suffer bodily injury, disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the costs of medical care and treatment.  These damages are either permanent or continuing in nature, and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment against Reliant for compensatory damages, plus costs, post-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT II - NEGLIGENCE

34. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this Complaint as though more fully set forth herein, and alleges further:

35. Reliant had a duty to exercise reasonable care in the manufacture, design, testing and distribution of the Fraxel® system it placed into the stream of commerce, including a duty to assure that the product did not cause users to suffer unreasonable or unnecessary injury.

36. Reliant failed to exercise ordinary care in the warning, design, manufacture, testing and/or distribution into the stream of commerce of the Fraxel® system used on Plaintiff in that Reliant knew or should have known that the Fraxel® system was not appropriate for use in people of Hispanic origin, such as Plaintiff.

37. Reliant was negligent in the design, manufacture, testing and/or distribution of the Fraxel® system used on Plaintiff in that it:

      A.      failed to use due care in designing, developing and manufacturing the Fraxel® system used on Plaintiff so as to avoid the aforementioned risks to individuals who used the system, such as Plaintiff;

      B.      failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the Fraxel® system used on Plaintiff;

      C.      placed an unsafe product in the stream of commerce; and

      D.      failed to warn Plaintiff and/or her physician of the dangers associated with the use of the Fraxel® system used on Plaintiff despite having actual and/or constructive knowledge of such dangers.

38.      Reliant knew or should have known that consumers such as Plaintiff could foreseeably suffer injury as a result of Reliant's failure to exercise ordinary care as described above.

39.      As a direct and proximate result of Reliant's negligence, Plaintiff was caused to suffer bodily injury, disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the costs of medical care and treatment. These damages are either permanent or continuing in nature, and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment against Reliant for compensatory damages, plus costs, post-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT III - BREACH OF IMPLIED WARRANTIES

40. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this Complaint as though more fully set forth herein, and alleges further:

41. At the time Reliant marketed, sold and distributed the Fraxel® system used by Plaintiff, Reliant knew of the use for which the Fraxel® system was intended, and impliedly warranted the Fraxel® system to be of merchantable quality and safe and fit for such use by persons Hispanic origins, such as Plaintiff.

42. Plaintiff reasonably relied upon the skill and judgment of Reliant as to whether the Fraxel® system was of merchantable quality and safe and fit for its intended use.

43. Contrary to such implied warranty, the Fraxel® system used on Plaintiff was not of merchantable quality or safe or fit for its intended use by persons of Hispanic origin, because there is and was an unreasonably high undisclosed risk of PIH in persons of Hispanic origin who used the Fraxel® system, and thus, the Fraxel® system was unfit for the ordinary purpose for which it was used as described above.

44. As a direct and proximate result of Reliant's breach of implied warranties, Plaintiff was caused to suffer bodily injury, disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the costs of medical care and treatment. These damages are either permanent or continuing in nature, and Plaintiff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment against Reliant for compensatory damages, plus costs, post-judgment interest, and for such further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues triable as of right by a jury.

Respectfully submitted,

/s/Alex Alvarez
**Alex Alvarez, Esq.**
Florida Bar No. 946346
**THE ALVAREZ LAW FIRM**
355 Palermo Avenue
Coral Gables, Florida 33134
Telephone:  (305) 444-7675
Facsímile:   (305) 444-0075
alex@integrityforjustice.com

and

**Joel S. Magolnick, Esq.**
Florida Bar No. 776068
**DE LA O, MARKO, MAGOLNICK & LEYTON**
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:   (305) 285-5555
magolnick@dmmllaw.com

Attorneys for Plaintiff