UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-22957-CIV-MARTINEZ-BROWN

ELENA MAGOLNICK,

    Plaintiff,

vs.

RELIANT TECHNOLOGIES, INC.,
RELIANT TECHNOLOGIES, LLC and
SOLTA MEDICAL, INC.

    Defendants.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT – FAILURE TO WARN**

Plaintiff, Elena Magolnick ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.5, hereby files her Memorandum of Law in support of her Motion for Partial Summary Judgment against defendants, Reliant Technologies, Inc., Reliant Technologies, LLC and Solta Medical, Inc. (collectively, "Reliant").

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On August 24, 2006, Plaintiff received the first of what was to be a series of three treatments for her mild melasma with Reliant's Fraxel® laser procedure. Statement of Undisputed Facts at ¶ 1. Reliant is the entity that developed and manufactured Fraxel® and introduced and delivered it into the stream of commerce, advertising it as a product intended as, *inter alia*, a "specific treatment of melasma, a disturbing skin pigmentation

that presents as patterns of dark brown patches on the face." Statement of Undisputed Facts at ¶ 2.

Prior to July 27, 2005, Fraxel® had been offered by Reliant for use in treating soft tissue coagulation, skin resurfacing and correction of periorbital wrinkles and pigmented lesions, including age spots, sun spots and skin discoloration. Statement of Undisputed Facts at ¶ 3. On or about July 27, 2005, Reliant expanded the application of Fraxel® for the specific treatment of melasma in all skin types. Statement of Undisputed Facts at ¶ 4.

Fraxel® uses a procedure called fractional photothermolysis, which employs an array of small laser beams to create many microscopic areas of thermal necrosis within the skin called microscopic treatment zones. Statement of Undisputed Facts at ¶ 5. The protocol used at the time treatment was rendered to the Plaintiff required the skin to be cleansed and a blue dye to be applied to the skin to aid in tracking of the laser beam deeper into the skin. Statement of Undisputed Facts at ¶ 6.

Commencing on August 24, 2006, Plaintiff, who is of Hispanic origin and who had mild melasma on certain discreet areas of her face, commenced what was to be a series of three (3) Fraxel® treatments with a physician who was, at that time, an instructor/consultant for Reliant. Statement of Undisputed Facts at ¶ 7.

In or about October 2006, after having undergone the first two Fraxel® treatments, Plaintiff experienced severe post-inflammatory hyperpigmentation ("PIH"). As a result of the Fraxel® treatments, Plaintiff's melasma spread significantly to previously unaffected areas on her face. Statement of Undisputed Facts at ¶ 8. Because of the severe reaction suffered as a result of the first two Fraxel® treatments, and in order

to avoid further worsening of her condition, the decision was made that Plaintiff would not undergo the third Fraxel® treatment. Statement of Undisputed Facts at ¶ 9.

In connection with the sale by Reliant of the Fraxel®SR750 to its customers, such as dermatologists, aestheticians and other practitioners, Reliant employed clinical educators. The educators' function was to, *inter alia*, oversee the installation of the Fraxel system for the customer, train the customer in the use of the system, and provide the customer with manuals, guides and other documentation created by Reliant for the Fraxel laser system. Statement of Undisputed Facts at ¶ 10.

Included among the documents provided by Reliant to its customers was a consent form (the "Consent"). Reliant created the Consent for its customers to have executed by patients prior to undergoing the treatment. Statement of Undisputed Facts at ¶ 11. The Consent was provided to Dr. Joely Kaufman, Plaintiff's physician, who provided it to Plaintiff. The Consent states, in pertinent part,

> **Pigment Changes -** Although *extremely rare*, the treated area may heal with increased pigmentation (increased skin coloring). This occurs most often with darker colored skin and after exposure of the area to sun. You may have experienced this type of reaction before and noticed it with minor cuts or abrasions. The treated area must be protected from exposure to the sun (sunscreen for 4 weeks after treatment) to minimize the changes of too much pigmentation (increased skin coloring). However, in some subjects, increased skin coloring may occur even if the area has been protected from the sun. These spots usually fade in three to six months. In some cases, the pigment change is permanent. During pregnancy, areas of increased pigmentation frequently appear spontaneously. For this reason, laser therapy is not recommended during pregnancy.

Statement of Undisputed Facts at ¶ 12 (emphasis added).

Reliant uses the term "extremely rare," when describing the incidence of post-inflammatory hyperpigmentation ("PIH") after treatment with Fraxel®, to mean **one percent (1%)**. Statement of Undisputed Facts at ¶ 13. Contrary to the Consent,

however, at the time of Plaintiff's treatment, Reliant knew, or reasonably should have known, that the risk of PIH for melasma treatments was not rare, and certainly not "extremely rare." In fact, prior to August 2006, Reliant knew that in the only two pilot studies presented by it to the FDA in March 2005 as part of its 510(k) submission for approval of Fraxel® as a treatment for melasma, the incidence of PIH in melasma patients treated with Fraxel® were **<u>10%</u>** and **<u>30%</u>**, respectively. Statement of Undisputed Facts at ¶ 14.

Further, unbeknownst to Plaintiff, at the time that she underwent the treatments, the Fraxel®SR750 was already outdated. Specifically, in mid-2006, which was prior to Plaintiff's first Fraxel® treatments with the SR750, Reliant introduced the Fraxel® SR1500, the first modification of the Fraxel® laser. Statement of Undisputed Facts at ¶¶ 15, 16. The Fraxel®SR1500 modified the Fraxel® system that was used on Plaintiff in numerous ways to significantly reduce or eliminate the risk of PIH, including, but not limited to, by providing better control over density settings. Statement of Undisputed Facts at ¶ 17.

Additionally, at the time Plaintiff underwent the Fraxel® treatments, Reliant knew, but failed to disclose, the following:

- Because Reliant launched its first Fraxel® laser system in 2004, there was no data available regarding the long-term safety and efficacy of Fraxel® laser systems.
- The clinical studies of aesthetic treatments were subject to a number of limitations.

- The results in Reliant's then existing clinical studies may not have been indicative of results that will be experienced by patients over time.

- The clinical studies performed by Reliant did not involve well-established objective standards for measuring the effectiveness of treatment.

- Some of Reliant's existing data had been produced in studies that involved relatively small patient groups, and the data may not have been reproducible in larger and more diverse patient populations.

- Clinical studies may conclude that a treatment is effective even if the change in appearance is subtle and not long-lasting.

- Additional long-term patient follow-up studies may indicate that Fraxel laser systems are not as safe and effective as Reliant believed.

- Additional long-term patient follow-up studies may indicate that Fraxel laser systems may not be as safe and effective as alternative treatments offered by others then or in the future.

Statement of Undisputed Facts at ¶ 18.

It is undisputed that patients undergoing the Fraxel® laser treatment are entitled to have all available information relating to the risks associated with the Fraxel® laser systems in order to be able to make an informed decision as to whether or not to undergo the procedure. Statement of Undisputed Facts at ¶ 19. Yet, despite knowing all of the above risks and limitations of the Fraxel®SR750, Reliant failed to include any of the foregoing in the Consent, which was prepared by Reliant for the express purpose of having Reliant's customers (doctors, aestheticians, etc.) provide the Consent to patients

for execution prior to undergoing treatment with Fraxel®SR750. Statement of Undisputed Facts at ¶ 20.

But for Reliant's representation in the Consent that the chances of pigmentary changes were "extremely rare," and Reliant's failure to disclose in the Consent any of the risk factors known to it as described above, Plaintiff would not have undergone the Fraxel treatments for her mild melasma. Statement of Undisputed Facts at ¶ 21.

On August 17, 2010, Plaintiff filed her Complaint against Reliant based upon strict liability, negligence and breach of implied warranties. On October 4, 2010, Reliant filed an Answer and Affirmative Defenses.

One of the claims upon which Plaintiff's Complaint is based is a failure by Reliant to warn of the risks which Reliant knew or reasonably should have known were associated with the use of the Fraxel®SR750 laser system. It is Reliant's failure to warn that is the subject of this Motion for Partial Summary Judgment.

## II.     ARGUMENT

### A.     Standards on Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "material" if it is a legal element of the claim under applicable substantive law that may affect the resolution of the action. *Anderson v Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Id.* The movant may meet this

standard by presenting evidence demonstrating the absence of a dispute of material fact, or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof. *Celotex Corp v Catrett,* 477 U.S. 317, 322-33, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986). It is not necessary for the moving party to supply affidavits or other similar materials negating the opponent's claim. *Id.*

Once the movant meets his or her initial burden of proof, the nonmovant must "go beyond the pleadings" and by affidavit, deposition testimony, answers to interrogatories and admissions, designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324, 106 S. Ct. at 2552-53. The nonmovant need not present evidence that would be admissible at trial, but "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v Zenith Radio Corp*., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S. Ct. 2505.

### B.     Negligence and Strict Liability Under Florida Law

Generally, to recover under a claim for negligence, Plaintiff has the burden of establishing:

1) a legal duty on the part of the defendant towards the plaintiff under the circumstances;

2) a breach of that duty by the defendant;

3) the defendant's breach of duty was the proximate cause of the plaintiff's injuries; and

4) the plaintiff suffered damages as a result of the breach.

*Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227 (Fla. 2010); *Humphreys v. General Motors Corp.,* 839 F. Supp. 822, 829 (N.D. Fla. 1993) (citing *Paterson v. Deeb,* 472 So. 2d 1210, 1214 (Fla. 1st DCA 1985) *aff'd,* 47 F.3d 430 (11th Cir. 1995); *Simon v. Tampa Elec. Co.,* 202 So. 2d 209 (Fla. 2d DCA 1967); *see also Stahl v. Metropolitan Dade County,* 438 So. 2d 14, 17 (Fla. 3d DCA 1983).

To recover under a claim for strict liability, a plaintiff needs to establish (1) that a defect was present in the product; (2) that it existed at the time the manufacturer parted possession with the product; and (3) that it caused the injuries of which Plaintiff complains. *See Cassisi v. Maytag Co.,* 396 So. 2d 1140, 1143 (Fla. 1st DCA 1981); *Humphreys,* 839 F. Supp. at 825-29; *Pulte Home Corp., Inc., v. Ply Gem Industries, Inc.,* 804 F. Supp. 1471, 1486 (M.D. Fla. 1992).

"[T]he manufacturer must use reasonable care in design and manufacture of its product to eliminate unreasonable risk of foreseeable injury." *Ford Motor Co. v. Evancho,* 327 So. 2d 201, 204 (Fla. 1976). "A product may be in a defective condition due to a design defect, a manufacturing defect or **defective warnings**." *St. Cyr v. Flying J, Inc.*, 2006 WL 2175662 (M.D. Fla 2002) (citing to *Brown v. Glade & Grove Supply, Inc.,* 647 So. 2d 1033, 1035 (Fla. 1st DCA 1994)) (emphasis added).

    C.    **Failure to Warn Under Florida Law**

        i.    **Failure to Warn – Negligence**

Under a negligence analysis, a "failure to warn" claim requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk "for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about." *Ferayorni v. Hyundai Motor Co.,* 711 So. 2d

1167, 1172 (Fla. 4th DCA 1998). "A duty to warn attaches, not when scientific certainty is established, but whenever a reasonable man would want to be informed of the risk in order to decide whether to expose himself to it." *Johns-Manville Sales Corp. v. Janssens*, 463 So. 2d 242, 251 (Fla. 1st DCA 1984).

    ii. **Failure to Warn – Strict Liability**

A claim for failure to warn under a strict liability theory, as contrasted with a negligence theory, does not focus on the standard of due care or the reasonableness of a manufacturer's conduct. Rather, "[t]he rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." *Ferayorni*, 711 So. 2d at 1172. "[M]anufacturers are not required to warn of every risk which might be remotely suggested by any obscure tidbit of available knowledge, but only of those risks which are discoverable in light of the 'generally recognized and prevailing best' knowledge available." *Id.*

  **D.** **There are no Genuine Issues of Material Fact Relating to a Failure to Warn Under Either Theory of Liability**

Whether analyzing Plaintiff's claim for failure to warn under a negligence theory or a strict liability theory, Plaintiff satisfies her burden for entry of partial summary judgment on this claim. Specifically, Reliant knew of particular risks and limitations associated with the Fraxel SR750 that it failed to disclose to Plaintiff.

Reliant undertook to prepare a Consent for its customers, including Plaintiff's treating physician, for execution by patients, such as Plaintiff, in which Reliant represented that the risk of pigmentary changes, including post-inflammatory

hyperpigmentation ("PIH") resulting from the Fraxel®SR750 was "extremely rare." Statement of Undisputed Facts at ¶¶ 11, 12. Reliant characterizes the term "extremely rare" as meaning one percent (1%) or less. Statement of Undisputed Facts at ¶ 13.

At the time that Reliant prepared and delivered the Consent to Dr. Joely Kaufman, Plaintiff's treating physician, Reliant had actual or constructive knowledge known that the risk of PIH from the Fraxel®SR750 was not rare, much less extremely rare. In fact, prior to August 2006, when Plaintiff underwent her first Fraxel® treatment, Reliant knew that in the only two pilot studies presented by it to the FDA in March 2005 as part of its 510(k) submission for approval of Fraxel as a treatment for melasma, the incidence of PIH in melasma patients treated with Fraxel were **10%** and **30%**, respectively, far in excess of the 1% that Reliant itself ascribes to the term "extremely rare." Statement of Undisputed Facts at ¶ 14. The Consent prepared by Reliant, however, does not make any reference to the results of either of the pilot studies.

Additionally, at the time that Reliant prepared and delivered the Consent to Plaintiff's treating physician, Reliant knew that:

> i. There was no data available regarding the long-term safety and efficacy of Fraxel laser systems.
>
> ii. The clinical studies of aesthetic treatments were subject to a number of limitations.
>
> iii. The results in Reliant's then existing clinical studies may not have been indicative of results that will be experienced by patients over time.

      iv. The clinical studies performed by Reliant did not involve well-established objective standards for measuring the effectiveness of treatment.

      v. Some of Reliant's existing data had been produced in studies that involve relatively small patient groups, and the data may not have been reproducible in larger and more diverse patient populations.

      vi. Clinical studies may conclude that a treatment is effective even if the change in appearance is subtle and not long-lasting.

      vii. Additional long-term patient follow-up studies may indicate that Fraxel laser systems are not as safe and effective as Reliant believed.

      viii. Additional long-term patient follow-up studies may indicate that Fraxel laser systems may not be as safe and effective as alternative treatments offered by others then or in the future.

Statement of Undisputed Facts at ¶ 18.

      Reliant admitted its knowledge regarding the foregoing in its filings with the Securities and Exchange Commission ("SEC") in August 2007 and November 2008. *Id.* Reliant believed these "risks" regarding the Fraxel® laser system to be significant enough to disclose them to the SEC. Reliant has also admitted that those undergoing the Fraxel® laser treatment were entitled to have all available information relating to its safety and efficacy. Statement of Undisputed Facts at ¶ 19. Yet, Reliant failed to include any of the risk factors in the Consent and concealed the known risks from those undergoing Fraxel treatment, such as Plaintiff, thus vitiating any notion of "informed consent."

Reliant failed to warn Plaintiff about those risks that a "reasonably prudent manufacturer would have known and warned about." *Ferayorni,* 711 So. 2d at 1172 . Moreover, information regarding the risks associated with the Fraxel®SR750 was certainly something that Plaintiff would have wanted to be informed of "in order to decide whether to expose [herself] to it." *Johns-Manville Sales Corp.*, 463 So. 2d at 251. *See* Statement of Undisputed Facts at ¶ 21. There is no genuine issue of material fact on Reliant's duty to warn.

Similarly, there is no genuine issue of material fact as to Reliant's breach of its duty to warn. The undisputed evidence is that Reliant knew, at the time that the Consent was signed by Plaintiff, that the results of the pilot studies submitted to the FDA showed that the occurrence of PIH in melasma patients treated with the Fraxel®SR750 were, respectively, 1000% and 3000% more than what Reliant represented in the Consent as being "extremely rare." Moreover, in its (1) Form S-1 Registration Statement, and (2) Prospectus filed with the SEC in August 2007 and November 2008, respectively, Reliant warned shareholders and potential shareholders of additional risks known to Reliant since the time that the Fraxel®SR750 was introduced to the market in 2004. As more fully set forth, *supra*, knowing these risks existed, Reliant misrepresented and failed to disclose them.

### E. Plaintiff's Injuries Were Proximately Caused by the Failure to Warn

Under Florida law, proximate causation "is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *McCain v. Florida Power Corp.*, 593 So. 2d 500, 502 (Fla.

1992). Foreseeability focuses on "whether the *specific* injury [to the plaintiff] was genuinely foreseeable or merely an improbable freak." *Id.* at 504.

In the instant case, it is undisputed that Reliant knew that PIH was a foreseeable consequence of the Fraxel®SR750. It is also undisputed that those undergoing the Fraxel® laser treatment are entitled to have all available information relating to the risks associated with the Fraxel® laser systems in order to be able to make an informed decision as to whether or not to undergo the procedure. Statement of Undisputed Facts at ¶ 19. Reliant knew, prior to, and at the time of, Plaintiff's treatments, that PIH was a foreseeable consequence of the Fraxel®SR750. Statement of Undisputed Facts at ¶ 14.

Finally, it is undisputed that, but for Reliant's representation in the Consent that the chances of pigmentary changes, such as PIH, were "extremely rare," and Reliant's failure to disclose in the Consent the other risk factors known to it as described above, Plaintiff would not have undergone the Fraxel treatments for her mild melasma. Statement of Undisputed Facts at ¶ 21. As a direct and proximate result of undergoing the Fraxel® treatments, Plaintiff suffered severe PIH. Statement of Undisputed Facts at ¶¶ 8, 9.

### III. CONCLUSION

Based upon the foregoing, Plaintiff has established that there is no genuine issue of material fact as to Reliant's failure to warn, and the proximate causation of Plaintiff's damages resulting therefrom. Accordingly, Plaintiff respectfully requests the Court to enter an Order granting Partial Summary Judgment in favor of Plaintiff, and for such further relief as this Court deems just and proper.

Respectfully submitted,

/s/Joel S. Magolnick
**Joel S. Magolnick, Esq.**
Florida Bar No. 776068
**DE LA O, MARKO,
MAGOLNICK & LEYTON**
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:   (305) 285-5555
magolnick@dmmllaw.com

and

**Alex Alvarez, Esq.**
Florida Bar No.  946346
**THE ALVAREZ LAW FIRM**
355 Palermo Avenue
Coral Gables, Florida 33134
Telephone:  (305) 444-7675
Facsímile:    (305) 444-0075
alex@integrityforjustice.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on April 4, 2011, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

/s/ Joel S. Magolnick
Joel S. Magolnick