008318.000039

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE No.: 10-CV-22957

ELENA MAGOLNICK,

     PLAINTIFF,

V

RELIANT TECHNOLOGIES, INC., RELIANT
TECHNOLOGIES, LLC AND SOLTA
MEDICAL, INC.,

     DEFENDANT.

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT: FAILURE TO WARN

The Defendants, RELIANT TECHNOLOGIES, INC., RELIANT TECHNOLOGIES, LLC and SOLTA MEDICAL, INC., (collectively, "RELIANT"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.5, hereby file their Response in Opposition to Plaintiff's Motion for Partial Summary Judgment: Failure to Warn, and state as follows:

1.    The Plaintiff, Elena Magolnick, had been suffering from a condition known as melasma (dark skin discoloration) since 2001. She first presented to the University of Miami Cosmetic Center in April of 2001 with the complaint of "Dark discoloration on upper lip and cheek . . . ." (*See* Exhibit "A," University of Miami Cosmetic Center Patient Information Sheet, dated April 10, 2001).

2.     Between May of 2004 and July of 2006, despite numerous treatments, including creams, peels, and intense pulse light treatments for hyperpigmentation, the Plaintiff testified that her melasma was not improving, which she found upsetting. (*See* Exhibit "B," Deposition of Elena Magolnick at pp. 16:22-17:7, 18:6-19:5, 28:17-29:12; Exhibit "C," Medical Records from the University of Miami Cosmetic Center, dated May 11, 2004 through July 20, 2006 ).

3.     During an appointment on July 20, 2006 with her dermatologist, Joely Kaufman, M.D., the Plaintiff questioned Dr. Kaufman about a new laser she had heard about and Dr. Kaufman informed her that it had just been approved for the treatment of melasma. Although Dr. Kaufman did not explain anything about the procedure, the Plaintiff decided, at that time, that she wanted to undergo the treatment. (*See* Exhibit "B," Deposition of Elena Magolnick, dated January 17, 2011, at pp. 31:15-32:10.)

4.     The treatment in question was to be performed with Reliant's Fraxel® SR750 laser, which was FDA approved for the treatment of melasma.

5.     On the day of the initial treatment, August 24, 2006, the Plaintiff signed a Consent Form. She testified that she was aware that one of the risks of the procedure was that the treated area might heal with increased pigmentation, and that in some cases the pigment change could be permanent. Despite her awareness that the procedure carried certain risks, the Plaintiff decided to go forward with having it. Prior to undergoing the first treatment, the Plaintiff did not discuss any of the potential risks with Dr. Kaufman and did not ask for any explanations regarding the risks noted in the Consent Form. Nor did she ask Dr. Kaufman about her experience with other patients

who Dr. Kaufman had treated with the Fraxel®.  (*See* Exhibit "B," Deposition of Elena Magolnick, dated January 17, 2011, at pp. 38:18-39:18, 43:22-44:12).

6.    The Plaintiff went back to Dr. Kaufman's office on October 10, 2006 to have the second treatment.  The Plaintiff has testified that she did not notice any change in her pigmentation after the first treatment.  She did not sign another Consent Form before she underwent the second treatment . Again, she did she have any discussion with Dr. Kaufman about the risks of the procedure.  (*See* Exhibit "B," Deposition of Elena Magolnick, dated January 17, 2011, at pp. 53:1-3, 57:5-57:10.)

7.    Prior to performing the second treatment, Dr. Kaufman took cross-polarized photographs of the Plaintiff.  In an e-mail to Reliant on April 28, 2007, the Plaintiff wrote that the photographs taken prior to the second treatment showed pigmentation coming through all over her face.  She also wrote that she was not shown these pictures and that she did not know why Dr. Kaufman did not look at the pictures before she did the second laser treatment.  Plaintiff further wrote, "Had I seen the pictures, I would have known not to have the second treatment." (*See* Exhibit "D," E-mail from Elena Magolnick, dated April 28, 2007).

8.    If, in fact, Plaintiff had been shown these pictures, and had not undergone the second treatment, there is certainly a question of whether she would have experienced prolonged hyperpigmentation.  It is for a jury to decide whether a possibly inappropriate judgment call by Dr. Kaufman to perform a second procedure is the cause of the Plaintiff's injury.

9.    Additionally, the medical record that Dr. Kaufman wrote, allegedly at the time of the second treatment of October 10, 2006, was initially dated November 28, 2006, which date was then crossed out. Dr. Kaufman also failed to fully complete the record, omitting calculations that showed some of the treatment parameters used on the Plaintiff during this second treatment. (*See* Exhibit "E," Medical Records from University of Miami Cosmetic Center, dated October 10, 2006). There is certainly a question of material fact as to whether Dr. Kaufman appropriately treated the Plaintiff on October 10, 2006 and whether the medical record in question was authored on October 10, 2006.

10.   Despite the fact that the Plaintiff initially wrote that she would not have had a second treatment if Dr. Kaufman had shown her the cross-polarized photographs taken on October 10, 2006, the Plaintiff is now alleging that it is an undisputed material fact that but for Reliant's representation in the Consent Form that the chances of pigmentary changes were "extremely rare," she would not have undergone the Fraxel® treatments for her melasma. (Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment at ¶ 8).

11.   However, as evidenced by her testimony, the Plaintiff never had any discussion with her treating physician regarding the risks associated with the treatment, nor is there any indication that the Plaintiff had any knowledge at that time as to what Reliant or her physician considered "extremely rare," as that term pertained to pigment changes. The same Consent Form also talks about a "small chance" of skin scarring, and that an infection is "possible." (*See* Exhibit "F," Consent Form, dated August 8, 2006). The Plaintiff has not submitted any evidence that she posed any questions prior to her

treatments regarding what these terms in the Consent Form translate to in terms of incidence.

12.    As such, the Defendants assert that there is certainly a question of material fact as to whether the Plaintiff relied on the words, "extremely rare" in one section of the Consent Form in making her decision to go forward with a new treatment for a condition that she had been trying to clear up for several years.

13.    It should also be pointed out that the Plaintiff's reaction after being treated with the Fraxel® was, in fact, "extremely rare," since it is extremely rare for a patient to experience hyperpigmentation for as long a period of time as the Plaintiff experienced it.

14.    Despite the fact that the Plaintiff did experience hyperpigmentation for several years, it has, for the most part, resolved.   The Plaintiff has testified that she is so happy now that those four years are behind her. (*See* Exhibit "B," Deposition of Elena Magolnick at pp. 139:18-140:2).

15.    Further, the Consent Form in question specifically states that in some cases the pigment change is permanent and warns that such an occurrence most often takes place after exposure of the area to sun.  The Plaintiff has testified that she went on a twelve-day Mediterranean cruise in May of 2007, which included sightseeing tours. She indicated that she did not manage to stay out of the sun the entire time. (*See* Exhibit "B," Deposition of Elena Magolnick at pp. 74:11-74:13, 75:13-76:21).

16.    The Plaintiff also asserts that Reliant knew that in the two pilot studies it presented to the FDA in March of 2005, as part of its 510(k) submission for patients treated with Fraxel® for melasma, the incidence of PIH was 10% and 30%.  However, both of

these studies noted that the patients who hyperpigmented were skin type V, (as opposed to the Plaintiff, who is skin type III as it pertains to her face).  (*See* Exhibit "G," University of Miami Cosmetic Center, Patient Information, dated May 11, 2004).

17.   Additionally, of the three patients in the second study who presented with hyperpigmentation following treatment, two of the cases were considered to be minor in severity and the third subject had significant resolution of the hyperpigmentation. Additionally, the studies noted that there were no serious adverse effects reported.  As such, it can be deduced that none of the patients in these studies experienced the type of reaction that the Plaintiff experienced.  (*See* Exhibit "H," *The Treatment of Melasma with Fractional Photothermolysis:  A Pilot Study*, by Rokshar, M.D. et al; Exhibit "I," *Treatment of Melasma Using a Novel 1550 nm Laser*, by Tse, M.D.)

18.   In April of 2008, after Fraxel® had been on the market for several years, the medical records from the University of Miami Cosmetic Center noted the rarity of Plaintiff's reaction to the Fraxel®:  "We have not seen this level of increased pigment after Fraxel."  (*See* Exhibit "J," University of Miami Cosmetic Center Medical Record, dated April 11, 2008).

19.   The Plaintiff has also alleged as an undisputed fact that the model used on her, the Fraxel® SR750 was "already outdated" at the time it was used on her.  However, the Plaintiff fails to distinguish between "outdated" and "updated."   While the Plaintiff asserts that the SR1500's modifications included, but were not limited to, providing better control over density settings, she has not presented any evidence that the SR750 posed any additional risks than the SR1500.  Further, the Plaintiff does not

state what other modifications she is alluding to.  In fact, the testimony in this case with respect to widening the range of densities in the SR1500 indicates that it had nothing to do with the reduction of potential complications from the Fraxel® treatment, but rather it helped to reduce treatment time.  (*See*  Exhibit "K," Deposition of George Frangineas, dated March 7, 2011, at pp. 143:21-146:8).

20.    And, although the Plaintiff asserts that Reliant's failure to warn her of possible complications from the use of the Fraxel® system caused her to suffer a worsening of her melasma, the Defendants contend that there are certainly disputed issues of material fact as to the cause of her injuries.  It is for the trier of fact to determine whether the Plaintiff's prolonged hyperpigmentation may have been exacerbated by her post-treatment regimen and sun exposure. The medical records indicate that subsequent to the second treatment, the Plaintiff began seeing a holistic doctor who treated her with various supplements and hormones.  Dr. Kaufman also noted in an e-mail that the Plaintiff may have been receiving salt scrubs to the area, which would worsen her condition.  (*See* Exhibit "J," University of Miami Cosmetic Center Medical Record, dated April 11, 2008; Exhibit "L," E-mail from Joely Kaufman, M.D., dated May 8, 2007).

21.    It should also be pointed out that in support of her allegations, the Plaintiff has not submitted any expert affidavits; she has submitted only her own self-serving, after-the-fact, conclusory affidavit. Florida courts have that conclusory affidavits as to plaintiff's subjective beliefs are insufficient, as a matter of law, to prove essential allegations. Frasher v. Fox Distributing of S.W. Florida, Inc., 813 So. 2d 1017 (Fla. 2d DCA 2002); Heitmeyer v. Sasser, 664 So. 2d 358 (Fla. 4th DCA 1995).

22.     While the Plaintiff argues that she is entitled to partial summary judgment on the grounds that Reliant failed to warn her about the risks of undergoing Fraxel® treatment, and that, as a direct result of the failure to warn, she was damaged, the Defendants assert, as stated above, there are genuine issues of material fact in dispute, thus precluding summary judgment. Further, proximate cause is a question of fact for the jury to resolve. *See* Stanley Industries, Inc. v. W.M. Barr & Co., Inc., 784 F. Supp. 1570 (S.D. Fla. 1992) (holding that material issues of fact as to whether warnings provided were adequate and whether alleged inadequacy of warnings was proximate cause of injury precludes granting of summary judgment).

23.     As such, the Defendants request that this Court deny Plaintiff's Motion for Partial Summary Judgment.


WHEREFORE, the Defendants, RELIANT TECHNOLOGIES, INC., RELIANT TECHNOLOGIES, LLC and SOLTA MEDICAL, INC., respectfully request this Honorable Court deny Plaintiff's Motion for Partial Summary Judgment on the grounds that there are genuine issues of material fact.

Case No: 10-CV-22957
Page 9 of 9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 22, 2011, I electronically filed the foregoing with the

Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this

day on all counsel of record, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronically Notice of Electronic Filing.

/s/Addison J. Meyers

Addison J. Meyers, Esq.
Florida Bar No. 267041
MINTZER, SAROWITZ, ZERIS, LEDVA
& MEYERS, LLP
The Waterford at Blue Lagoon
1000 N.W. 57th Court, Suite 300
Miami, Florida 33126
Phone: (305) 774-9966
Fax:    (305) 774-7743
Email: ameyers@defensecounsel.com